UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Hou-Tex Trust, a Texas trust,

Plaintiff,

v.

Civ. No. 00-306(RHK/JMM)
**MEMORANDUM OPINION AND ORDER**

Tuschner & Company, Inc., a Minnesota corporation; Tuschner Financial Group, Inc., a Minnesota corporation; John M. Tuschner, an individual; Francis A.Dahlberg, an individual; Dennis B. Reiter, an individual; Northstar Management Group, Inc., a Minnesota corporation; Robert L. Cashman, an individual; Equity Capital Group, Inc., a Colorado corporation; Robert P. Atwell, an individual; Corporate Solution, an entity unknown; and Does 1 through 10,

Defendants.

---

Roger D. Anderson, Anderson Law Office, St. Paul, Minnesota, for Plaintiff.

James F. Hanneman and Michael C. McCarthy, Maslon Edelman Borman & Brand, Minneapolis, Minnesota, for Defendant John M. Tuschner.

---

## Introduction

Plaintiff Hou-Tex Trust ("Hou-Tex") commenced the instant action alleging that the Defendants, through fraudulent and/or negligent misrepresentations, induced Hou-Tex to invest in a brokerage. Currently before the Court is Defendant John M. Tuschner's

FILED AUG 0 4 2000
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD________
DEPUTY CLERK________

("Tuschner") Motion to Dismiss. For the reasons stated below, the Court will deny the Motion in part and grant it in part.

**Background**

Hou-Tex is a trust organized and existing under the laws of Texas. (Am. Compl. ¶ 14.) Defendant Tuschner & Company, Inc. ("TCI") is a broker/dealer of securities that is owned by Tuschner Financial Group, Inc. ("TFGI"). (Id. ¶¶ 18, 20.)

In December of 1998, TCI and TFGI were experiencing financial hardship. (Am. Compl. ¶ 18.) In particular, TCI was having difficulty meeting and maintaining the net capital requirements imposed by the Securities and Exchange Commission and the National Association of Securities Dealers. (Id.) In an attempt to remedy their capital shortfalls, TCI and TFGI courted several investors who could provide additional capital and, between December of 1998 and May of 1999, urged Hou-Tex to invest in TCI and TFGI. (Id. ¶ 19.) These contacts were made by Tuschner, Francis A. Dahlberg ("Dahlberg"), and Dennis B. Reiter ("Reiter"), the officers and directors of TCI and TFGI. (Id. ¶¶ 15, 19.) Under the proposed investment plan, Hou-Tex would acquire operating control of TFGI and TCI through a holding company named Northstar Management Group, Inc. ("Northstar") in exchange for a contribution of capital sufficient for TCI to comply with the above-mentioned net capital requirements. (Id. ¶ 19.)

Between December of 1998 and May of 1999, Hou-Tex investigated the financial conditions of TFGI and TCI. (Am. Compl. ¶ 21.) As part of this process, management

from TFGI, TCI, and Northstar, including Tuschner, Dahlberg and Defendant Robert L. Cashman[1] ("Cashman") provided Hou-Tex with financial statements, books, records, and reports describing the financial condition of TFGI and TCI. (Id.) During this time, Sammy Fleschler ("Fleschler") and Dean Cubley ("Cubley"), co-trustees for Hou-Tex , visited the offices of TFGI and TCI. (Id. ¶ 22.) At these visits, Fleschler and Cubley met with Tuschner, Defendant Robert P. Atwell ("Atwell"), and Reiter, and discussed the materials provided to Hou-Tex about the financial condition of TFGI and TCI. (Id. ¶ 22.) Tuschner, Atwell, and Reiter represented to Fleschler and Cubley that the financial materials accurately described the condition of TFGI and TCI. (Id.)

According to Hou-Tex, however, the financial materials did not disclose all of the liabilities of TFGI and TCI. (Am. Compl. ¶ 23.) Specifically, the financial materials did not disclose: (1) $96,000 in legal fees owed to Fried, Frank, Harris, Shriver & Jacobson; (2) $116,000 in legal fees owed to Furber, Timmer & Zahn, P.L.L.P.; and (3) $70,000 owed to TCI's clearing firm, Miller, Johnson & Kuehn, Inc. (Id.) Of the $116,000 owed to Furber, Timmer & Zahn, $111,595.62 was in the form of a promissory note personally guaranteed by Tuschner. (Id. ¶ 24.)

In addition to the above described meetings, Atwell also came to Houston, Texas on at least two occasions between December of 1998 and May of 1999 to meet with Hou-

---

[1] Cashman was a direct or indirect owner of Northstar, TFGI, and TCI. (Am. Compl. ¶ 16.)

Tex trustees and representatives and discuss the financial conditions of TFGI and TCI. (Am. Compl. ¶ 25.) During the meetings that took place between December of 1998 and May of 1999, Tuschner, Dahlberg, and Cashman represented to Hou-Tex that TFGI and TCI would subordinate the claims of certain creditors to the claims that Hou-Tex would acquire in the assets of Northstar. (Id. ¶ 27.) In addition, TFGI, TCI, and Northstar represented to Hou-Tex during this time period that the shares of common stock of Eagle Wireless International, Inc. ("Eagle") that Hou-Tex intended to use to fund the investment would be held by Northstar as an asset, but would not be sold, transferred, or otherwise alienated. (Id. ¶ 29.)

On May 18, 1999, Northstar was formed to act as a holding company for TFGI, which in turn owned 99% of the capital stock of TCI. (Am. Compl. ¶ 20.) On that same day, Hou-Tex transferred 310,000 shares of Eagle common stock to Northstar in exchange for 697,500 shares in Northstar. (Id. ¶¶ 30.) At the time of the transfer, Eagle common stock was traded at $2.56 per share. (Id.)

On May 26, 1999, the management of TFGI, TCI, and Northstar induced Hou-Tex to release all restrictions upon the transfer or sale of the 310,000 shares of Eagle common stock. (Am. Compl. ¶ 31.) Northstar subsequently transferred the shares into account(s) held by TCI. (Id. ¶ 32.) By July of 1999, Northstar, TFGI, and TCI had sold or exchanged the 310,000 shares of Eagle stock in whole or in part to satisfy the pre-existing and previously undisclosed debts of Northstar, TFGI, TCI, and/or Tuschner. (Id. ¶ 33.)

## Analysis

### I. Standard of Review

In considering a motion to dismiss for failure to state a claim upon which relief may be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must take as true the allegations contained in the complaint. See Cooper v. Pate, 378 U.S. 546, 84 S. Ct. 1733 (1964) (per curiam). A complaint

> must be viewed in the light most favorable to the plaintiff and should not be dismissed merely because the court doubts that a plaintiff will be able to prove all of the necessary factual allegations. "Thus, as a practical matter, a dismissal under Rule 12(b)(6) is likely to be granted only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief."

Fusco v. Xerox Corp., 676 F.2d 332, 334 (8th Cir. 1982) (quoting Jackson Sawmill Co. v. United States, 580 F.2d 302, 306 (8th Cir. 1978)). Viewing the complaint in this manner, the court may dismiss a case under Rule 12(b)(6) only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. See Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 101-02 (1957)).

### II. The Merits

Hou-Tex alleges that the Defendants engaged in fraudulent and negligent misrepresentations. (Am. Compl. ¶¶ 36-51.) Tuschner argues that the Court should dismiss both claims as they relate to him individually because: (1) the fraudulent

misrepresentation claim fails to satisfy Fed. R. Civ. P. 9(b) and otherwise fails to state a claim under Rule 12(b)(6); and (2) no duty exists under Minnesota law to support a claim for negligent misrepresentation because the transaction at issue was commercial and at arms length. (Tuschner's Reply Mem. at 1.)

**A. Fraudulent Misrepresentation**

Rule 9(b) requires that allegations of fraud be pled with particularity in order to "deter fishing expeditions of unknown wrongs designed to compel 'in terrorem settlements' and to ensure the defendants are given sufficient notice of the allegations against them." In re Digi Int'l, Inc. Sec. Litig., 6 F. Supp. 2d 1089, 1095 (D. Minn. 1998) (Tunheim, J.) (citing Parnes v. Gateway 2000, Inc., 122 F.3d 539, 549 (8th Cir. 1997)); see also Chiron Corp. v. Abbott Labs., 156 F.R.D. 219, 220-222 (N.D. Cal. 1994) (applying Rule 9(b) to a defense of inequitable conduct in a patent action). "In other words, the complaint[] must specify the 'who, what, when, where, and how' of the alleged fraud." In re Digi Int'l Sec. Litig., 6 F. Supp. 2d at 1095.

The Court finds that Hou-Tex has satisfied the requirements of Rule 9(b) with regard to its claim for fraudulent misrepresentation against Tuschner. Although the factual basis for the claim could be more detailed, Hou-Tex has provided minimally sufficient information to inform Tuschner of the "who, what, when, where, and how" of Tuschner's alleged fraudulent conduct. Specifically, Hou-Tex's pleadings alert Tuschner that the allegation of fraudulent misrepresentation is based upon statements that he made

in various meetings between December of 1998 and May of 1999, involving inaccurate financial reports, false assurances that Hou-Tex's stock would not be sold or reached by creditors, and the omission or non-disclosure of certain financial liabilities of TFGI and TCI.

In reaching this conclusion, the Court rejects Tuschner's argument regarding actions taken by the "management" of Northstar, TCI, and TFGI to induce Hou-Tex to release the restrictions on the Eagle stock. Tuschner asserts that this allegation is central to Hou-Tex's claim and that it does not identify his involvement with sufficient particularity to satisfy Rule 9(b). (Tuschner's Reply Mem. at 4-5.) Hou-Tex's failure to name Tuschner in relation to this allegation, however, does not violate Rule 9(b) because the inducement itself is not one of the alleged fraudulent misrepresentations. The allegedly fraudulent misrepresentations upon which Hou-Tex's claim is based are instead the communications that occurred between December of 1998 and May 18, 1998 regarding TFGI and TCI's financial reports and the status of Hou-Tex's stock investment. (Pl.'s Opp'n Mem. at 5.) Rule 9(b) requires that the <u>circumstances constituting fraud or mistake</u> shall be stated with particularity; it does not require particularity or specificity for all events relevant to the relationship between the parties.

Tuschner also seeks dismissal of Hou-Tex's fraudulent misrepresentation claim pursuant to Rule 12(b)(6) for failure to state a claim. Although the exact basis for Tuschner's Rule 12(b)(6) challenge is unclear, Tuschner appears to argue that Hou-Tex

has failed to allege any facts establishing a causal relation between Tuschner's conduct and the damages allegedly suffered by Hou-Tex. The Court disagrees. Viewing the allegations in the Amended Complaint in the light most favorable to Hou-Tex, the Court finds no insuperable bar to relief on the issue of causation. See Jackson Sawmill Co. v. United States, 580 F.2d 302, 306 (8th Cir. 1978) ("Thus, as a practical matter, a dismissal under Rule 12(b)(6) is likely to be granted only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief.") Accordingly, the Court will deny Tuschner's Motion as to Hou-Tex's fraudulent misrepresentation claim.

**B. Negligent Misrepresentation**

In Bonhiver v. Graff, 311 Minn. 111, 248 N.W.2d 291 (1976), the Minnesota Supreme Court adopted the Restatement (Second) of Torts definition of negligent misrepresentation:

> One who, in the course of his business, profession or employment, or in a transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Id. at 122, 248 N.W.2d at 298-99; see also Florenzano v. Olson, 387 N.W.2d 168, 174 n.3 (Minn. 1986). "An essential element of negligent misrepresentation is that the alleged misrepresenter owes a duty of care to the person to whom they are providing the

information." Smith v. Woodwind Homes, Inc., 605 N.W.2d 418, 424 (Minn. Ct. App. 2000). "In Minnesota, one making representations is held to this duty of care only when supplying information, either for the guidance of others in the course of a transaction in which one has a pecuniary interest, or in the course of one's business, profession, or employment." Florenzano, 397 N.W.2d at 174. However, where "adversarial parties negotiate at arms length, there is no duty imposed such that a party could be liable for negligent misrepresentations." Safeco Ins. Co. of America v. Dain Bosworth, Inc., 531 N.W.2d 867, 871 (Minn. Ct. App. 1995); Travelers Express Co., Inc. v. American Express Integrated Payment Sys., Inc., 80 F. Supp. 2d 1033, 1041 (D. Minn. 1999) (Davis, J.).

Tuschner argues that he did not owe a duty to Hou-Tex because the transaction at issue was an arms-length transaction between adversarial parties. (Tuschner's Supp. Mem. at 8-9; Reply Mem. at 2-3.) Hou-Tex does not dispute that an arms-length transaction between adversarial parties occurred, but contends Tuschner nonetheless owed a duty because he had a pecuniary interest in the transaction, namely his need to satisfy a debt that he had personally guaranteed. (Hou-Tex's Opp'n Mem. at 9.)

Even if the Court assumes that Tuschner's desire to satisfy a personally guaranteed debt amounted to a "pecuniary interest" in the transaction with Hou-Tex, the Court nonetheless finds that Tuschner owed no duty to Hou-Tex. Courts applying Minnesota law have declined to find the existence of a duty, despite the existence of a pecuniary

interest, where parties to the transaction were negotiating at arms length. See Safeco, 531 N.W.2d at 869-72 (underwriter for a bond had no duty where transaction occurred at arms length); Kellogg Square Partnership v. Prudential Insurance Company of America, 63 F.3d 699, 703 (8th Cir. 1995) (relying, in part, on Safeco for conclusion that seller of a building did not have a duty to inform buyer of asbestos). Contrary to Hou-Tex's assertion, the undisputed arms-length nature of the transaction in the instant case precludes a finding that Tuschner owed a duty to Hou-Tex. See Leonard v. Northwest Airlines, Inc., 605 N.W.2d 425, 424 (Minn. Ct. App. 2000) (party not supplying guidance or advice where it was engaged in an arms-length transaction).

Hou-Tex argues that Tuschner is nonetheless liable for negligent misrepresentations because he violated his duty to "disclose accurate information when disclosure would be necessary to clarify information already disclosed, which could otherwise be misleading." (Hou-Tex Opp'n Mem. at 9.) In the context of fraudulent misrepresentation cases, Minnesota courts have recognized that a duty to disclose material facts arises in three circumstances:

> (a) One who speaks must say enough to prevent his words from misleading the other party;
> (b) One who has special knowledge of material facts to which the other party does not have access may have a duty to disclose those facts to the other party;
> (c) One who stands in a confidential or fiduciary relation to the other party to a transaction must disclose material facts.

Klein v. First Edina Nat'l Bank, 293 Minn. 418, 421, 196 N.W.2d 619, 622 (1972); see also Kellogg, 63 F.3d at 702. It is not clear, however, that the three circumstances giving rise to a duty to disclose in fraudulent misrepresentation cases are applicable to claims for negligent misrepresentation. In Safeco, the Minnesota Court of Appeals rejected a similar attempt to import the standards for fraudulent misrepresentation into a negligent misrepresentation claim, finding that to do so "could impose a duty in negligence on every party in all transactions." Id. at 872-73. The Safeco court reasoned that it "would be unreasonable to impose a duty whenever a party gives any information to another party" because the cause of action for negligent misrepresentation imposes a duty only on parties "providing information for the guidance of others in the course of business or where there is a pecuniary interest." Id. at 873. The court concluded that the appropriate cause of action for parties in other types of commercial relationships is limited to suit in contract or in fraud. Id.; see also Hunerberg Constr. Co v Glass Serv. Co., Nos. C9-97-1737, C3-97-2253, 1998 WL 345470, at *3-4 (Minn. Ct. App. June 30, 1998) (adopting Safeco).

In reaching this conclusion, the Safeco court distinguished the Minnesota Supreme Court's decision in M.H. v. Caritas Family Services, 488 N.W.2d 282 (Minn. 1992). In Caritas, the Minnesota Supreme Court addressed the question of whether "public policy favor[ed] legal protection of the interests of adoptive parents against the negligent conduct of adoption agencies." Id. at 287. As issue was the plaintiff's claim that once the

adoption agency disclosed that incest existed in the adopted child's background, the adoption agency assumed a duty to make a complete and adequate disclosure by informing the adoptive parents that the child's genetic parents were siblings. Id. at 287-88. The Caritas court stated, in the context of a negligent misrepresentation claim, "even if one has no duty to disclose a particular fact, if one chooses to speak he must say enough to prevent the words from misleading the other party." Id. at 288. The Caritas court also noted that "a duty to disclose facts may exist 'when disclosure would be necessary to clarify information already disclosed, which would otherwise be misleading,' particularly when a confidential or fiduciary relationship exists between the parties." Id. (quoting L & H Airco, Inc. v. Rapistan Corp., 446 N.W.2d 372, 380 (Minn. 1989) (fraudulent misrepresentation claim)). The Safeco court distinguished Caritas on the ground that is was a factually specialized case, relying in part on the Minnesota Supreme Court's warning in Caritas that "conduct actionable against one class of defendants is not automatically actionable against another class of defendants." Safeco, 531 N.W.2d at 873 (citing Caritas, 488 N.W.2d at 287).

The holding in Safeco, however, conflicts with several decisions of this Court. Although this Court has not directly addressed the instant issue, it has previously used the three sources of a duty to disclose in fraudulent misrepresentation claims to determine whether a party has undertaken a duty for purposes of a negligent misrepresentation claim. See Masepohl v. American Tobacco Co., Inc., 974 F. Supp. 1245, 1251 (D. Minn.

1997) (Magnuson, J.); Sailors v. Northern States Power Co., Civ. No. 4-92-253, 1992 WL 532172, at *9 (D. Minn. July 13, 1992) (MacLaughlin, J.), aff'd 4 F.3d 610 (8th Cir. 1993); see also United States v. Sheehan Properties, Inc., 285 F. Supp. 608, 612 (D. Minn. 1968) (Neville, J.) (finding that once information was disclosed, "a duty fully and reasonably to disclose existed").

The Eighth Circuit addressed the issue in Kellogg, but did not provide a definitive resolution. In Kellogg, the plaintiff brought claims for both fraudulent and negligent misrepresentation against the seller of a building. Kellogg, 63 F.3d at 700-03. The Kellogg court first analyzed the fraudulent misrepresentation claim and found that the seller's conduct did not fall within one of the three situations giving rise to a duty to disclose for purposes of the fraud claim. Id. 702. Turning to the negligent misrepresentation claim, the Kellogg court concluded that because the seller "was under no duty to disclose, the [negligent misrepresentation] claim fail[ed]." Id. at 703. The Kellogg court proceeded to state, however, that under the Safeco decision, the seller "did not even owe [the buyer] a duty of care in the first place." Id. at 703 (citing Safeco for the proposition that no duty exists for purposes of a negligent misrepresentation claim between parties to a commercial transaction negotiated at arms length). Thus, the Kellogg court appears to have embraced both Safeco and the method of analyzing negligent misrepresentation claims the Safeco court rejected.

Having reviewed the applicable law, the Court finds the Safeco decision persuasive and concludes that a party to a commercial transaction does not undertake a duty, for purposes of a negligent misrepresentation claim, apart from the situations provided for in the Minnesota Supreme Court's definition of the claim in Bonhiver. To hold otherwise would inappropriately expand the scope of this cause of action to include commercial representations well beyond those that would otherwise subject the speaker to possible liability in negligence. As the Minnesota Supreme Court stated in Florenzano, "one making representations is held to [a] duty [to disclose] only when supplying information, either for the guidance of others in the course of a transaction in which one has a pecuniary interest, or in the course of one's business, profession or employment." Florenzano, 387 N.W.2d 168, 175 (Minn. 1986) (emphasis added). Although overlap will certainly exist in many cases where a statement may give rise to a cause of action under both fraud and negligence theories, that overlap should exist because the statement independently satisfies the elements of each cause of action, not by virtue of an expansion of the cause of action for negligent misrepresentation.

In reaching this conclusion, the Court agrees with the Minnesota Court of Appeals that Caritas is a factually distinguishable and possibly unique case that does not alter the landscape for negligent misrepresentation claims in commercial transactions. Indeed, the Minnesota Supreme Court has subsequently made clear that Caritas "solely" decided "that a negligent misrepresentation claim against an adoption agency was not barred under the

specific facts of that case." Smith v. Brutger Cos., 569 N.W.2d 408, 414 n.4 (Minn. 1997). Accordingly, the Court concludes that the Minnesota Supreme Court's decision in Caritas does not control the instant case.

Because the Court concludes that a negligent misrepresentation claim will not lie between parties to a commercial transaction who negotiate at arms length, and because the Court rejects Hou-Tex's attempt to expand this cause of action, it will grant Tuschner's Motion as to Hou-Tex's negligent misrepresentation claim. In so holding, the Court notes that Hou-Tex is not left without a remedy for Tuschner's alleged wrongdoing. As the Safeco court noted, a party that cannot bring a cause of action for negligent misrepresentation may seek relief in contract or in fraud. Safeco, 531 N.W.2d at 873. Hou-Tex has done so in the instant case.

## Conclusion

Accordingly, for the foregoing reasons, and based upon all of the files, records, and proceedings herein, **IT IS ORDERED** that Tuschner's Motion to Dismiss (Doc. No. 6) is:

(1) **DENIED** as to Hou-Tex's fraudulent misrepresentation claim; and

(2) **GRANTED** as to Hou-Tex's negligent misrepresentation claim. Hou-Tex's claim against Tuschner for negligent misrepresentation is **DISMISSED WITH PREJUDICE**.

August 4, 2000

RICHARD H. KYLE
United States District Judge